HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROWDY DANE BROCK,

        Plaintiff,

v.

WASHINGTON STATE DEPARTMENT OF CORRECTIONS, a government corporation; IDA RUDOLPH-LEGGETT, Washington State Administrator for the Interstate Compact Commission; JOE VANBUSKIRK, Community Corrections Officer; ANDREA GALANDO, Hearings Officer; and TOM GRABSKI, Community Corrections Officer,

        Defendants.

Case No. C08-5167RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon the Washington State Defendants' Motion for Summary Judgment [Dkt. #59]. On September 18, 2009 this Court entered a perfunctory Order granting Defendants motion [Dkt. #69]. This Order sets forth the Court's reasoning for its decision. Having considered the entirety of the records and file herein, the Court rules as follows:

## I. BACKGROUND

**A.**   <u>**Facts.**</u>

On April 17, 1995 plaintiff Rowdy Dane Brock was sentenced to 20 years (with 15 years suspended) in prison on the charge of being a Persistent Felony Offender by a Montana state court judge. His first parole began on September 24, 1996. He quickly re-offended and had his parole revoked. While

awaiting transfer to prison, he absconded from a pre-release facility and remained a fugitive for approximately ten months. Once apprehended, he was again sentenced to prison and again paroled on January 26, 2000. On January 16, 2001 a Montana State Probation and Parole Officer filed another violation report alleging five violations during the year 2000. What action was taken, if any, on that violation report is not in the record in this case.

In 2003 plaintiff moved to Washington and was supervised by the Washington Department of Corrections (DOC) pursuant to the Interstate Compact for Adult Offender Supervision. He adjusted poorly to supervision in Washington. Brock failed to report to his supervising officer, changed residences and failed to notify DOC of his new address, failed to make restitution payments to his Montana victims, and was arrested multiple times for driving on a suspended license. Once arrested, he would invariably fail to appear and bench warrants would be issued.

Community Corrections Officers (CCO's) document the contacts they make with offenders under their supervision and other information in the offender's supervision file. These entries are called "chrono notes." A chrono note dated January 3, 2006 notes that plaintiff's then CCO received information from a victim advocate indicating that Brock's significant other (referred to as "B.J.H.") had reported to the advocate that Brock threatened to kill her and their 3 year old son. B.J.H. also made unsubstantiated allegations that Brock had been sexually grooming their son. CCO's searched for Brock at his listed address in Aberdeen, Washington but could not find him. He was located ten days later in Kent, Washington and directed to report to the Kent DOC office. On January 19, 2006 the duty officer received a call from a "female caller stating she is ex of P[1] and scared P is going to find her."

On January 20, 2006 Brock appeared at the Kent DOC office and met with CCO Mustain. Officer Mustain informed Brock that he must have no contact with B.J.H., and if he continues to contact her he may be facing new charges of stalking and harassment. Brock indicated that he just wanted to be sure his son was fine, and that there was a pending hearing in Superior Court on February 2, 2006. Mustain informed Brock that he needs to let the court handle the matter.

---

[1] From the chrono notes it is obvious that "P" is used as shorthand for the offender under supervision.

ORDER
Page - 2

**1. Defendant CCO Tom Grabski**.

On January 23, 2006 Brock's supervision was assigned to CCO Tom Grabski who directed Brock to report to him the following day. Brock reported as directed and was again informed to have no contact with B.J.H. and to allow the court to handle the family matters.

On February 9, 2006 Officer Grabski went to Brock's apartment in Kent on a field visit. The house was filthy, including a large stain of what appeared to be fecal matter in the bathroom and on the sheets in Brock's bedroom. Grabski also noted that there were condoms on the floor in both the child's room and Brock's bedroom. Because B.J.H. had previously reported possible molestation of the child, Grabski informed a detective with the Kent Police of what he found. He was again advised to have no contact with B.J.H. Plaintiff alleges that during this visit Officer Grabski confiscated a subpoena issued by King County Superior Court and directed at Verizon Wireless for telephone records of B.J.H. and another woman together with the records obtained as a result of the subpoena. Although the chrono notes for that day do not indicate that anything was confiscated and Grabski has no recollection of seizing the materials, a copy of the subpoena was found in Brock's supervision file.

Officer Grabski made another home contact with Brock on February 17, 2006 and again advised him to have no contact with B.J.H. or anyone connected to her, and to let the courts handle the matter.

On March 1, 2006 Brock reported to Grabski that he was being evicted and has to move out by March 3, 2006. On March 2, 2006 Grabski received a call from B.J.H. who was inquiring about Brock and about what is happening with the custody of their child. She was told that she should contact the King County Court and informed that DOC was not involved in civil matters. Brock reported to Grabski on March 3, 2006 with court orders that he is to have custody of the child, that he is supposed to receive child support from B.J.H., and has obtained a no contact order against her. Brock stated that he would like to find B.J.H. and Officer Grabski informed Brock that he "needs to go through the court or law enforcement[] DOC does not get into civil matters."

Brock reported to Grabski on March 6, 2006 with his belongings and stated he was moving to Aberdeen. On March 7, 2006 B.J.H. called once again stating that Brock continues to call her and she fears for her safety. CCO Grabski had no further contact with Brock or B.J.H. after this meeting and phone call, and on March 14, 2006 the file was transferred to the Montesano office.

## 2. **Defendant CCO Joe VanBuskirk**.

Officer VanBuskirk began supervising Brock in April, 2007 out of the Lacey office. On July 31, 2007 Brock reported to the DOC that he had gotten into a verbal argument with his girlfriend, Ms. Lisa Lathrop, and wanted to advise his CCO ahead of her possible complaints. Brock again reported to Officer VanBuskirk on August 1, 2007 that "he was having trouble with his roommate" who threatened to call DOC on him. The next day, police were called to a domestic dispute between Brock and Lathrop. As a result of the police contact, Brock was arrested on a bench warrant for failure to appear on a charge of driving on a suspended license and held in the Olympia City Jail. While Brock was in custody on the failure to appear warrant, Officer VanBuskirk received a report that on or about July 28, 2007 Brock dangled a three year old child by the ankles over a second story balcony railing at an apartment in Lacey. Officer VanBuskirk also learned that the mother of the three year old and two other women had obtained restraining orders against Brock.

On August 8, 2007, Brock was transferred to the Lewis County Jail for a hearing on the violations of his probation. Officer VanBuskirk filed an offender violation report alleging that Brock had violated the conditions of his probation by failing to appear on the driving while license suspended charge and for endangering the safety of a child. Officer VanBuskirk recommended that Brock be returned to Montana.

## 3. **Defendant Andrea Galando, DOC Hearings Officer**.

On August 16, 2007, Ms. Galando conducted a hearing on Officer VanBuskirk's violation report. At the hearing, Brock plead guilty to the violation alleging his failure to appear and plead not guilty to endangering a child. Ms. Galando found Brock guilty of both charges and recommended that he be returned to Montana. Montana accepted the recommendation and sent a no bail warrant.

For some unknown reason, Montana was unable to have him transferred to Montana while still in custody. Instead, in early October, 2007, Montana cancelled the warrant and instructed Brock to return to Montana on his own. Washington DOC closed their file on him on October 15, 2007.

## B. **Procedural History.**

Plaintiff's original complaint named, together with the Washington defendants who are bringing the instant motion, the Oregon Department of Corrections, Max Williams, its Director, and Bill Jeffreys, Multnomah County Probation and Parole Officer. On October 15, 2008 this Court granted the Oregon

Department of Corrections and Bill Jeffreys' Fed. R. Civ. P. 12(b) Motion to Dismiss the Complaint against them based on lack of personal jurisdiction and Eleventh Amendment immunity. [Dkt. #36]. On November 21, 2008 this Court granted Bill Jeffreys' Motion for Summary Judgment based on the lack of personal jurisdiction. [Dkt. #45]. In that same Order, this Court granted Plaintiff's Motion to Amend his Complaint.

Plaintiff's First Amended Complaint alleges twenty separate causes of action arising from his supervision in Washington and eventual return to Montana. He brings suit under 42 U.S.C. §1983. His first five causes of action are against Officer Grabski and the DOC and arise from the same event. Plaintiff alleges (without any evidentiary support) that Grabski told his ex-girlfriend that plaintiff was dangerous and that she should leave the state. He alleges that this statement was false and therefore violated his Fifth and Fourteenth Amendment rights to equal protection, due process, liberty and property, together with various rights under the Washington State Constitution.

Plaintiff's sixth through tenth causes of action are also against Officer Grabski and the DOC and arise from Officer Grabski allegedly confiscating the subpoena directed at Verizon Wireless from plaintiff. He alleges that Grabski and the DOC violated his Fourth Amendment right to be free from unreasonable seizures, and his Fifth and Fourteenth Amendment rights to equal protection, due process, liberty and property, together with various rights under the Washington State Constitution.

Plaintiff's remaining causes of action are against Officer VanBuskirk, Hearings Officer Andrea Galando, Washington State Administrator for the Interstate Compact Commission Ida Rudolph-Leggett, and the DOC. These causes of action arise from Officer VanBuskirk's violation report, the hearing and finding of guilt on the violations, and plaintiff's subsequent return to Montana. He alleges that these events violated his Fifth and Fourteenth Amendment rights to due process, liberty and property, rights under the Washington Constitution, various federal laws and rules, several state laws, and the policies of the DOC.

## II. DISCUSSION

A. <u>**Summary Judgment Standard**</u>.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a

matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor."  *Triton Energy*, 68 F.3d at 1220.

**B.     The Eleventh Amendment Bars this Suit Against the State and its Officers Acting in an Official Capacity.**

The State of Washington, Washington DOC and the individual defendants, insofar as they are sued in their official capacities, enjoy immunity from suit under the Eleventh Amendment.  *See Papasan v. Allain*, 478 U.S. 265 (1986); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), overruled in part on other grounds, *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *see also, Quern v. Jordan*, 440 U.S. 332 (1976) (holding that 42 U.S.C. §1983 does not override States' Eleventh Amendment Immunity).  Furthermore, the State has not waived its Eleventh Amendment Immunity for suits brought pursuant to 42 U.S.C. §1983.  *Rains v. State*, 100 Wn.2d 660, 666 (1983).  Individuals acting in their official capacity may not be sued for damages.  *Papasan*, 47 U.S. at 278; *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988).

**C.     The State and its Officers are Not "Persons" Under 42 U.S.C. §1983.**

Title 42 U.S.C. §1983 provides that" "Every person who, under color of [state law], subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured . . .."  It is well settled, however, that the State and officers acting in their official capacities are not "persons" under 42 U.S.C. §1983.  *Will*, 491 U.S. at 69-71.

ORDER
Page - 6

For the reasons stated in Sections B and C above, the Defendants' Motion for Summary Judgment on behalf of the State, the DOC, and the individual defendants to the extent they are alleged to have acted in their official capacities, is **GRANTED**. The State, the DOC and all defendants acting in their official capacities are **DISMISSED** from this action.

**D.  Ida Rudolph-Leggett Did Not Personally Participate in Plaintiff's Supervision or Decision to Return Plaintiff to Montana.**

In order to be liable for the deprivation of plaintiff's rights, a defendant must commit an affirmative act, participate in another's affirmative act, or omit to act when legally required to do so that causes the deprivation complained of. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978); *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 2006). Plaintiff concedes that Ms. Rudolph-Leggett as the Administrator of the Washington State Interstate Compact Commission, did not personally participate or fail to act when required in plaintiff's supervision or in the decision to return him to Montana. Plaintiff thus concedes that Ms. Rudolph-Leggett should be dismissed as an individual from this suit. Defendants' Motion for Summary Judgment as to Ms. Rudolph-Leggett is **GRANTED** and she is **DISMISSED** from this suit.

**E.  Defendants CCO Tom Grabski and CCO Joe VanBuskirk are Entitled to Qualified Immunity.**

**1.  Qualified Immunity standard**.

Defendants Tom Grabski and Joe VanBuskirk move for summary judgment on plaintiff's claims asserting that they are protected by qualified immunity. Pursuant to the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing a qualified immunity defense, the Court must determine first, whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and then, whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. The privilege of qualified immunity is an immunity from

suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Id.*

The Supreme Court has recently held "that the *Saucier* protocol should not be mandatory in all cases . . .[but] it is often beneficial." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). In this case it is beneficial to first determine whether a constitutional right was violated before moving to the second question of whether the right was clearly established.

### 2. Claims against CCO Tom Grabski.

Plaintiff's first two causes of action allege that Officer Grabski made a false statement and committed the tort of libel when Grabski allegedly told plaintiff's ex-girlfriend that plaintiff was dangerous and that she should leave town. He also alleges that Officer Grabski instructed him to have no contact with his ex-girlfriend and his son. The defendants move for summary judgment based on qualified immunity arguing that plaintiff has no factual support for this claim, and that even if he did, Officer Grabski's conduct did not violate plaintiff's constitutional rights. Plaintiff's response merely states that he has listed witnesses who "will" testify to these events, but he has not supplied affidavits or sworn declarations of these witnesses.

In *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963-964 (9th Cir. 2004), the Court made it clear that once a defendant makes a properly supported motion for summary judgment based on official immunity, the plaintiff must come forward with evidence of his own. The Court may not rely on plaintiff's complaint alone. *Id.* Allegations unsupported by any other evidence are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250. Plaintiff has failed in his burden here.

Even if plaintiff were to produce some evidence that the statements were made, such actions do not rise to constitutional violations cognizable under 42 U.S.C. §1983. *See Collier v. Austin Peay State University*, 616 F. Supp.2d 760, 775 (M.D. Tenn. 2009) (claims of libel, slander, defamation and mere tortious conduct do not involve violations of constitutional rights). To the extent plaintiff attempts to claim that purported violation of 18 U.S.C. §1001 (false statements) and 18 U.S.C. §242 (deprivation of rights under color of law) rise to constitutional violations cognizable under 42 U.S.C. §1983, these claims fail because neither criminal statute confers a private right of action. *Loehr v. Ventura County*

*Community College Dist.,* 743 F.2d 1310, 1320 (9th Cir. 1984) (18 U.S.C. §1001); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (18 U.S.C. §242).

Plaintiff's third and fourth cause of action allege that Officer Grabski was in "contempt of court" because when he allegedly told plaintiff's ex-girlfriend to leave the state with plaintiff's son, Grabski interfered with a court order providing plaintiff visitation rights with his son. Notwithstanding the failure of plaintiff to meet his burden under Fed. R. Civ. P. 56 as to this issue, he has no standing to invoke the contempt powers of the court, and thus no private right of action under any of the statutes he cites.

Plaintiff's fifth cause of action which is based on the same alleged statement(s) as the first four claims, may be considered as a claim for a violation of his liberty interest in the parent-child relationship. Plaintiff alleges that he was deprived of 365 days of visitation with his son due to Grabski's statement(s). The Ninth Circuit has recognized a limited liberty interest in a non-custodial parent's visitation rights with their child. *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2006) ("[W]e therefore hold that non-custodial parents with court-ordered visitation rights have a liberty interest in the companionship, care, custody, and management of their children. Such an interest is unambiguosly lesser in magnitude than that of a parent with full legal custody.") The right is one of substantive due process. *Id*.

Plaintiff's claim of a constitutional violation fails for two reasons. First, he has not come forward with any evidence that Grabski actually told plaintiff's ex-girlfriend to leave the state. And, second, plaintiff has failed to point to any state court orders in the record before this Court that demonstrated that plaintiff had visitation rights with his son.

Even if a liberty interest existed, plaintiff has failed to show that the right as applied to him was "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201. Plaintiff cites no case, and the Court is not aware of any, that is even remotely factually similar. Plaintiff was a state probationer under supervision. As such, he is "subject to a broad range of restrictions that might infringe constitutional rights in a free society." *United States v. Kincade*, 379 F.3d 813, 833 (9th Cir. 2004) (internal quotations and citations omitted); *United States v. Kriesel*, 508 F.3d 941, 947 (9th Cir. 2007). As a condition of his probation, he was to obey all laws. Officer Grabski had reports that plaintiff was threatening and harassing his ex-girlfriend. Officer Grabski reasonably told plaintiff to cease such actions and to stay away from his ex-

girlfriend and their child.  These actions were reasonable and do not "shock the conscience" such that a substantive due process claim for violation of a liberty interest could be sustained.  *Brittain*, 451 F.3d at 996.  At the very least, plaintiff did not have any clearly established liberty interest (under the facts of this case) which Grabski would have known he was violating.

Plaintiff's sixth through tenth causes of action arise from Officer Grabski's allegedly seizing a subpoena (and the records obtained therefrom) issued by the King County Superior Court at plaintiff's request and directed at Verizon Wireless.  The subpoena sought cell phone records and the current house addresses of plaintiff's ex-girlfriend and of another woman.  Although Officer Grabski does not recall seizing the subpoena, Grabski states that had he come across the subpoena he would have seized it, and a copy of the subpoena was found in DOC's supervision file.  For purposes of this motion, the Court will assume that Officer Grabski seized the subpoena.

As stated earlier, due to his status as a probationer, plaintiff has lesser rights than a person who is not a convicted felon.  *See Kincade* and *Kriesel, supra*.  As part of his conditions of probation, plaintiff was subject to reasonable searches and seizures.  Because Officer Grabski had information that plaintiff was attempting to contact his ex-girlfriend and was harassing her, Grabski reasonably directed plaintiff to cease and to stay away from her and from those associated with her.  When he found evidence that plaintiff was searching for the ex-girlfriend through a subpoena, he reasonably seized that subpoena.  Furthermore, had Officer Gabski seized the records obtained from the subpoena, he would have also been acting reasonably.

Plaintiff has not shown that Officer Grabski violated any of his constitutional rights by seizing the subpoena (and records).  To the extent any such constitutional right existed, it was not clearly established and Officer Grabski is entitled to qualified immunity.

Defendants' Motion for Summary Judgment as to plaintiff's claims against CCO Tom Grabski is **GRANTED**.  Plaintiff has not shown that any of his constitutional rights were violated, or if so, that they were clearly established.  Defendant CCO Tom Grabski is protected by the doctrine of qualified immunity and all claims against him are **DISMISSED**.

### 3. Claims against CCO Joe Van Buskirk.

Plaintiff's eleventh through twentieth causes of action all stem from Officer Van Buskirk's filing of a violation report, the violation hearing, and plaintiff's subsequent return to Montana. Although the complaint raises ten supposed violations of his rights including the failure to proceed by indictment, the denial of a jury trial, and unlawful imprisonment, it appears plaintiff has abandoned all but two claims. In plaintiff's response to the motion, he argues only that Officer VanBuskirk violated his due process rights by failing to conduct a probable cause hearing and violated his confrontation clause rights by providing hearsay testimony at his violations hearing. [Plaintiff's Response, Dkt. #64, p. 14].

The failure to hold a probable cause hearing, even if required and even if holding the hearing was Van Buskirk's responsibility, does not give rise to a due process violation. *See Olim v. Wakinekom*, 461 U.S. 238, 250-251 (1983). Process is not an end unto itself, *id.*, and the record reflects that plaintiff's violations hearing occurred only eight days after he was transferred and three days after the violations report was filed. Plaintiff had no substantive right that was violated.

Plaintiff next claims that his confrontation clause rights were violated when Officer VanBuskirk gave testimony based on hearsay at his violation hearing. Plaintiff does not indicate what testimony was hearsay, but the Court assumes it involved the allegations made to Officer VanBuskirk that plaintiff had endangered the safety of a child by dangling a three-year old off a second floor balcony. Because "the revocation of parole is not part of a criminal prosecution . . . the full panoply of rights due a defendant . . . does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Hearsay, in some circumstances, is admissible in probation revocation hearings. *U.S. v. Miller*, 514 F.2d 41 (9th Cir. 1975). Plaintiff has not demonstrated here how his substantive due process rights were violated by the admission of Officer VanBuskirk's testimony. As such, the Court need not decide whether Officer VanBuskirk is protected by absolute immunity or qualified immunity based on his role in returning plaintiff to Montana. *See Swift v. California*, 384 F.3d 1184 (9th Cir. 2004).

Defendants' Motion for Summary Judgment on plaintiff's claims against CCO Joe VanBuskirk is **GRANTED**. All claims against him are **DISMISSED.**

**4. Claims against Hearings Officer Andrea Galando.**

All of plaintiff's claims against Ms. Galando relate to her role as the Hearings Officer who presided over his violation hearing. Ms. Galando performed the duty previously assigned to judges. She was charged with determining whether a recommendation would be made to Montana officials that plaintiff should be returned to Montana under the Interstate Compact as the sending state. As such, she was "performing a duty functionally comparable to one for which officials were rendered immune at common law[]", *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc) and is entitled to absolute immunity. In *Swift v. California, supra,* the Ninth Circuit determined that parole officials who are charged with making the discretionary decision whether or not to revoke parole are entitled to quasi-judicial immunity. *Swift*, 384 F.3d at 1189.

Defendants' Motion for Summary Judgment on plaintiff's claims against Hearings Officer Andrea Galando is **GRANTED**. Ms. Galando has absolute immunity and all claims against her are **DISMISSED.**   F.   **All Claims Based on the Washington Constitution are Dismissed.**

Plaintiff alleges violations of the Washington Constitution. "Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation[.]'" *Blinka v. Wash. State Bar Assn.,* 109 Wash. App. 575, 591, 36 P.3d 1094, 1102 (2001) (*citing Sys. Amusement Inc. v. State*, 7 Wash. App. 516, 517, 500 P.2d 1253 (1972). Plaintiff has not cited any augmentative legislation for any of the state constitutional violations he alleges. Therefore, all claims made that are based on the Washington Constitution are **DISMISSED**.

### III. CONCLUSION

Defendants' Motion for Summary Judgment [Dkt. #59] is **GRANTED**. All claims against all remaining defendants are **DISMISSED.**

**IT IS SO ORDERED.**

DATED this 20th day of October, 2009.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE